The next case on the call of the docket is Agenda No. 6, Case No. 125117, People of the State of Illinois v. Rasheed Casler, Mr. Daniel Janowski. Mr. Casler. Good morning. My name is Daniel Janowski with the Office of the State Appellate Defender, and I represent the defendant in this matter, Mr. Rasheed Casler. I'd like to begin my discussion this morning by analyzing this Court's decision of people against Pomich from 2011, because its holdings are vital for an understanding of the law in this case. As the Court will recall, Pomich dealt with the definition of conceal under the obstruction of justice statute, subsection A, in particular of that statute. The defendant in that case was pursued by police officers, ended up throwing a crack pipe and pushrod over a six-foot fence in the plain view of the officers. And the officers were then, after the defendant in that case was taken into custody, were able about 20 seconds later to go and recover that contraband. And this Court had held, whether or not the defendant there had concealed that evidence, that one obstructs justice through concealing evidence if the defendant, quote, actually interferes with the administration of justice, i.e., materially impedes the police officer's investigation. And since it was done within the plain view of the officers and took a very short period of time to recover, this Court found that he had not concealed that evidence. The Court went on to hold that, thus, in enacting section 31-4, the obstructing justice statute, the legislature intended to criminalize behavior that actually interferes with the administration of justice, i.e., conduct that obstructs prosecution or defense of any person. And it's important to note there that that wasn't limited to just subsection A or any other subsection there, but that language applied to the entire section or entire act for the obstructing justice statute. And so today we're here before you on the furnishing false information that's contained within the same subsection as concealing. And a number of other verbs there, destroys, alters, conceals, disguises, plants false evidence. And so initially it was being consistent to apply different standards to those verbs within the same subsection of the act. This is supported by the doctrine of nocetur associates, meaning that these words must all be read together in order to define what the meaning of the word furnish false information would be. And since this Court has already spoken as to what the meaning of the word conceal would be, conduct that actually interferes with the administration of justice, that would be applied then to destroys, alters, disguises, plants, and furnishes. It's not a stretch to imagine that, take for an example the verb of destroy evidence, that evidence hasn't been destroyed if there isn't a material impediment. In other words, evidence that hasn't been sufficiently destroyed would just be regular evidence that there would be no material impediment there. The Comer's decision was also concerned about absurd results coming from a proposed state's meaning of the word conceal. And I think the Court had used an example of minors in possession of cigarettes. If they were to put them in a pocket as a police officer was approaching under the state-proposed rating of a statute in that example, that could take conduct that was punishable by fine only and amp that up to conduct that would be a felony, a class 4 obstructing justice. In my reply brief, I give an example of an individual who was stopped for speeding. If an officer walks up to the car door, asks the individual, sir, were you speeding? If the answer is no, and the individual knew full well that he was speeding, but he's doing that in order to try to move the officer along his way and avoid a ticket there. He's trying to avoid, with intent to avoid his prosecution, could be charged with obstructing justice. Perhaps a better example would be an individual who was stopped for driving under the influence. If he's highly intoxicated and the officer walks up to the window of the car, sir, have you been drinking? And if the response is yes, but I've only had two drinks, that is provided in a way to send the officer along the way. No, I'm okay to drive. In other words, with intent to avoid his prosecution for DUI. However, the ruse could be up as soon as the officer approaches that window. If the officer's window rolls down, if he smells alcohol, if he slurs his speech, if there's nonsensical responses or delayed reactions, the officer would not believe that he only had two drinks. And so therefore, he wouldn't rely upon that response and there would be no material impediment. He could continue to go on and investigate and possibly arrest that individual. And so the material impediment there would be an important requirement in order to limit that obstructing justice conduct to that which actually interferes with the administration of justice. Mr. Janoski, you rely on Comidge. Of course, the gist of that, the entire focus was whether there was a concealment and how a concealment would be defined. Have we ever used the material impediment in connection with any other portion of obstruction of justice? Not subsection 31-4 has that been used. The obstruct language has been used in this Court's decision in Baskerville, which deals with the obstructing or resisting of a peace officer. That's a related statute. It's not the same statute. The word obstruct is found within that statute. In other words, that one commits the offense if they obstruct or resist the peace officer, knowingly obstruct or resist the peace officer. And so in that case, the material impediment was discussed as required for that conduct, which is actually a class A misdemeanor, a lesser offense than obstructing justice that's found here today. And so in this case, as I present my brief, my client's actions didn't materially impede the officer. The testimony was that he was in a hotel room in Carbondale. As soon as my client had opened the door, the officer testified that he knew without a doubt who it was, even though he had provided a false name some minutes earlier that showed up as a nonentity whenever the officers had put that through the search through the database. And after that, the officer told my client through the hotel room door, I'm not leaving until I'm able to identify you. So in fact, the false name actually caused the officer, didn't materially impede the investigation. It actually caused the officers to kind of take notice, hey, somebody's behind there that I need to identify. And so there was testimony that in total, a possibility of 24 minutes had passed from the initial knock at the door to the time that my client had been taken into custody. And so that's kind of the outermost bounds of the time frame that we're discussing. And the second district in 2012 in the Taylor case had found that a 10-minute delay was not a material impediment to the investigation. In Taylor, there was a defendant crossing the street in which the officers recognized him from a prior arrest, went up to him, sir, what's your name? Gave him a false name. They relied upon that and ran it through the database, through the police database. That came up as a nonentity. And it took them roughly 10 minutes in order to find out that his actual name was in fact Taylor, and they were able to take him into custody. The second district there said since they were pretty certain who it was, there was no material impediment, there was no reliance upon it because they continued the investigation. How do you define material impediment? I guess that would be conduct that actually interferes with the administration of justice. So material impediment then would be a decision for a fact finder to make whether or not that investigation had been impeded. Could there be a time? Are you talking about a time element that's involved? Possibly. I guess it would be a fact-based determination. Under the Comidge decision, it was a delay of 20 seconds between the time that the officers saw the crack pipe being thrown over the fence and the time that the officers were able to recover that. But I don't think the time element there wasn't the most important factor because the officers went there as soon as they had arrested the defendant. Had the officers gone back five minutes later or 30 minutes later or an hour later to recover that evidence, this court's determination probably wouldn't have been any different because the officers saw the crack pipe being thrown over, they knew where it was at, and they were able to go recover it. So while time might be a factor to that, it wouldn't be the sole determinant as to whether or not a material impediment had occurred. Did the state prove your client guilty of attempt obstructing justice? No. There was no charge for attempt obstructing justice. I think had he been charged with attempt obstructing of justice, I think the case would have been much stronger there because there wasn't the material impediment. Because the facts in that case really wasn't concealment. It was attempt to conceal because the officers saw. Yes. That's exactly right. So there was an attempt. False name provided, the jury had found that he had the intent to try to deceive the officers, but since there was no material impediment, in our case, there isn't. He hasn't furnished the false information, but there was an attempt to furnish that false information and obstruct justice. Following up on Justice Norman's question on time, in this case, I think it was about 24 minutes from the time the officer entered until the time the arrest was made. In the meantime, a different name had been given that they had to check out. Is that not material? Well, the record isn't clear. So that 24 minutes was from the time of initial knock at the door to the time that my client was taken into custody. So we're not sure exactly how long of a period of time it took for the officer. So they knock on the door. There's two officers in the hallway. They notice that there are four individuals in the hotel room. Officer Draper testifies that he recognizes those four individuals. They're trying to figure out who had rented that hotel room. They get consent to search that hotel room. Other officer Harcy then leaves to go down to the front desk in order to try to get that information. And it's during this kind of introductory period, as soon as they had knocked on that hotel room, that Officer Draper notes to somebody in the hotel bathroom, yells in there, don't flush or I'm coming in, because of his knowledge that some people might be trying to hide contraband in there, at which point they ask, if somebody's in there, please identify yourself. So it's sometime less than 24 minutes, but the outer bounds would be the 24 minutes. And the fact that the officer, as soon as that false name was given, didn't leave the scene, didn't turn his attention elsewhere, that's why there wouldn't be a material impediment. The statute really doesn't require that the false information given to the police actually impede the arrest, isn't that right? The language of the statute does not require that, no. But the legislature could make it a crime to give false information to the police if that information is given with the intent to prevent apprehension. The legislature could put something else in the statute to require it, with intent. Yeah, well, there is an intent requirement here that the defendant is required to defend his prosecution or defense of him or another person. So there is an intent requirement within the statute. There isn't this requirement explicitly stated in the statute of the material impediment. However, this Court has found that that statute only seeks to outlaw conduct that materially impedes investigation. So that's a determination this Court has already made, that while not explicit, the legislature had intended. If there's no further questions, I request that this Court reverse Mr. Pendler's conviction and find the material impediment a requirement for refurnishing the false information to sustain a conviction for obstructing justice. Thank you. Thank you, Mr. Janowski. Mitchell John Ness. Good morning, Your Honors. Counsel, may it please the Court. Mitchell Ness on behalf of the people of the State of Illinois. Illinois' obstruction of justice statute makes it a crime to knowingly furnish false information if it's done with the intent to prevent traffic action. That is precisely what the defendant did here. The plain meaning of the word furnished is simply in the context of the statute, to provide or supply. And that plain meaning does not require a material impediment. Because no policy arguments can overcome the plain meaning of a statute, this Court should incline to require a material impediment within the word furnished and affirm the defendant's conviction. It's interesting, given that this Court is tasked with determining the plain meaning of the word furnished, that the Court was not just presented with the definition of the word furnished. Webster's Dictionary defines the word as to provide or supply with what is needed, useful, or desirable. It goes on to say that the word furnished is a general term indicating supplying or providing. This is most naturally read into the statute as a person obstructs justice when they knowingly, or with the intent to prevent their apprehension, knowingly provides or supplies false information. And that is precisely how this Court read the statute in its 2015 case in Rankine. In that case, the Court was tasked secondarily with determining the sufficiency of the evidence to uphold a conviction for obstruction of justice and furnishing false information. And the Court in that case said that the obstruction of justice statute is violated when a person knowingly provides false information with the intent to prevent their seizure or arrest. The Court then, on its own, without engaging in an elongated and unnecessary session for interpretation analysis, substituted the word provide for the word furnished, because the meaning of the word furnished couldn't be more plain. It simply means to provide. And this Court said that on its own to mean provide false information. That's what is necessary to violate the statute. The defendant relies heavily on this Court's decision in Comidge. However, Comidge clearly distinguished was, as all sides recognize, that case dealt with the plain meaning of the word concealed. This case deals with the plain meaning of the word furnished. They are already an opposite for that reason. The Court in that case was tasked with determining the plain meaning of the word concealed. Further, to the extent that the Court doesn't want to look at Comidge, the two words are directly antonyms of one another. Concealed literally means, in some form or fashion, to hide. And furnished, as the plain meaning indicates, means to provide. They are directly contradictory to one another. It makes little sense to glean any meaning of the word furnished in this case from the meaning of the word concealed. Further, the Court's underlying reasoning in Comidge is clearly distinguishable here. The Court in that case was tasked, was given essentially two definitions, one by the State and one by the defendant. The State indicated that, or argued for, a definition that was slightly broader, that a person concealed evidence when it was out of sight. The defendant actually asked for the opposite and asked for a stricter definition, meaning that concealed has to be something slightly more permanent, that the evidence needs to be a little bit more permanent. I'm not sure if you want to talk about the phrase obstructing justice. Want to talk about impeding an investigation? I'd say, first and foremost, they were tasked with, they were looking at plain meaning of the word concealed. But the paragraph that talks about actually interfering with the administration of justice defines the phrase obstructing justice. Right. I think the Court did say in that case that the obstructing justice statute is aimed at criminalizing conduct that actually impedes the administration of justice. I think that phrase is best read within the context of what the Court was tasked with confronting in Comidge and the concerns that this Court had in Comidge. So in that case, the Court was tasked with determining essentially where on a spectrum Illinois' definition of the word concealed would fall, either slightly hidden or significantly hidden. So it's within that context that the Court considered the ramifications of dealing with the state's interpretation, which would be essentially a potential for minor possessory offenses to become felony obstruction of justice offenses, simply because a kid put cigarettes in his pocket when he saw a police walk close to him or marijuana or something along those lines. They were first and foremost concerned that the idea of possessory offenses would be elevated to felony obstruction. In determining then where on the spectrum that the word concealed would fall, the Court turned to the harms that come with overzealous prosecution in this area. And that's, I think, where the Court said that in that context the obstruction statute is meant to really deal with conduct that actually obstructs justice. I think those concerns are not present within the word furnish and the crime of furnishing false information. It's a significantly different act in the concealed context of a person who saw cops approaching and hit something in their, or just put it in their pocket quickly. Those two acts are largely connected, and that's why the Court was concerned that a possessory offense would become felony obstruction. In this case, if a person is asked, in Rasheed Kasser's situation, he's asked what his name is, and he knows that he has a warrant for his arrest, and he chooses to lie, it's a completely separated act from the underlying warrant that he's trying to get away with potentially. Defendants, when they furnish false information, make an intentional and active choice to lie to a police officer. In this Court, it's held repeatedly, starting with People v. Ellis, that lying to police officers is bad, the state has a legitimate interest in prohibiting it. And that there is a third option in every case in which a person lies. They can either defend in this approach, they can tell the truth, they can lie, or they can say nothing. And the fact that a defendant chooses to lie elevates this into sort of, it takes away the fear of non-culpable conduct becoming felony obstruction, because felony obstruction is in and of itself a separate crime, the legislature has made it a separate crime. Mr. Ness, following up on Justice Berg's question, since obstructing justice is a Class 4 felony, shouldn't the false information, giving the police a false name, actually impede the defendant's arrest? And in this case, did it? To the first question, I would say no. The plain meaning of the word furnish is clear and doesn't require material impediment. The fact that this is a Class 4 felony is largely irrelevant to the plain meaning of the word furnish. I understand the concerns that the court might have, that something that seems like a minor lie might become a felony conviction. However, that's the legislature's determination. No, it's not just the lie, it's does it impede or obstruct justice? Right. I think, though, that one of the reasons why this court in Colmage did find that concealing required material impediment was because of the Class 4 felony and elevating accessory offenses to Class 4 felonies. So I think they read that into the word conceal and it influenced this court's decision to define conceal a little more strictly than the state wanted. Turning to the second question, I would argue that this Colmage, as was discussed, the police officer in that case had to simply walk around the fence and within 20 seconds had found the evidence that had been thrown over. Here, the officer approached a hotel room at 2 in the morning in which five people were inside, four people that he could see and one that he could not, and he had to wait there for at least 20 minutes while he sorted out the person's identity. He was there trying to investigate illegal activity going on in the hotel room. He was not there to find the defendant. Instead, he had to divert his original intention to find the defendant for at least 20 minutes while backup arrived, while his partner was downstairs, and it took him a significant time. Once he was able to figure out who the defendant was, he was then able to secure the rest of the room. I think that's a material impediment here. I think, as the court asked earlier, time is a significant factor, or it should be a significant factor, in determining what an impediment is. There's a strong difference between Colmage, which is 20 seconds, and here, which was 20 to 24 minutes. This is further illustrated by the context in which officer safety comes into play here, where he was prolongated in a somewhat dangerous situation. It's fair to say that this court, if it does reach whether or not this was a material impediment, should give some guidance to the appellate courts and not allow this to become a simply fact-by-fact basis. Since this court's decision in Colmage, there are a number of Rule 23 unpublished health court cases dealing with when evidence is concealed and whether it's a material impediment. They're kind of all over the board, and they clearly need some guidance on what exactly a material impediment is. So I would argue that 24 minutes is certainly enough for a material impediment. There's probably a line lower than that that would fall in line. A couple of questions, and I have one following up on Justice Michael Burke's question. You made a point of saying that, in this case, he gave the name and he knew he had an outstanding warrant. Would it be the same result if he just gave the false name and he didn't have an outstanding warrant? No, that wouldn't be obstructing of justice as a felony. That would be obstructing identification, which is a misdemeanor. That's the next statute over. It's 31-4.5. My second question is, how do you respond to the defendant's argument that the speeding they committed obstruction of justice? So two points to that. The first is it's difficult for me to imagine a scenario in which a defendant can be proven guilty beyond a reasonable doubt of knowingly lying about the speed they were going. I think that it would be nearly impossible unless he admits on the stand that, yes, I knew I was going 80, but I said I was going 74. And so the beyond a reasonable doubt portion of the intent requirement here, I think, takes care of a lot of potentially questionable prosecutions under the obstruction of justice statute. The second point is essentially the defendant has painted a picture of a sympathetic liar, and that this Court and the legislature has consistently said that defendants do not have a right to lie to police officers, and the legislature has valid rights to deter that conduct. So to the extent that a person with a very minor speeding ticket offense, or a speeding infraction, or something other than very minor, decides to elevate that and decides to lie to a police officer, they have essentially committed a separate offense, which becomes a felony obstruction of justice, and the legislature has said that that's not allowed. And so to the extent that the defendant has a very minor speeding ticket offense, and decides to elevate that and decides to elevate that, they have essentially committed a separate offense, which becomes a felony obstruction of justice, and the legislature has said that that's not allowed. And so to the extent that a person with a very minor speeding ticket offense decides to elevate that and decides to elevate that, they have essentially committed a separate offense, which becomes a felony obstruction of justice. So the DUI arrestee who says, I didn't have anything to drink and later takes a blood test that shows he or she, in fact, did have something to drink, has lied, it's been proven that that person has lied, beyond a doubt, that would be an obstruction of justice. I think it's the same thing with the speeding hypothetical. In that case, the state still needs to prove that they knew that they lied. If you get into questions of inebriation and whether a person has sufficient intent to do anything at that point, if it can be proved that if the defendant somehow admits that they knew that they had drank and that they lied, that's obstruction of justice. So if there are no further questions, the state asks that this court confirm the decision. Thank you, Mr. Ness. Mr. Janowski? There's four points I'd like to raise. The first is the council's discussion about the plain meaning of the act. Plain meaning isn't the be-all, end-all of what this court is tasked with determining. It's tasked with determining what the legislature's intent is, as this court has held before. Plain meaning might be the best way, but there's also a requirement to look at the purpose of the act, look at the act as a whole, and look at what remedies were intended there. And this court has already done that in the Comich decision, which found that the obstructing justice statute that the legislature had intended to outlaw conduct that actually interferes with the administration of justice. So that holding has already been made by this court. The second point is this court's decision in Wray Q.P. That dealt with the issue of whether or not a defendant had been apprehended. So the obstructing justice statute requires with intent to prevent an apprehension or with intent to somehow delay or interfere with the prosecution or defense of an individual. This court had focused solely upon the apprehension. The discussion about furnishing false information was done at the end of the decision without any real discussion. So that's dicta by this court. Third point I'd like to raise is that of the material impediment. That's already required under factual determination as to what constitutes a material impediment. It's already required under Illinois law. This, of course, Baskerville decision was tasked with initially first determining whether or not a false statement could be conduct that constitutes the obstruction of a peace officer, the class A misdemeanor. And so with this court's determination that yes, false statement can be conduct that interferes with or obstructs a peace officer's investigation. Now we've got a false statement. And secondly, that statute requires one to obstruct the peace officer's performance of his official duties. And so what this court has found is that that obstruction within Baskerville requires a material impediment. So in the context of that statute, a class A misdemeanor, that factual determination is already required under Illinois law. And finally, the example of the question of whether or not a false statement provided whenever the intent was there to prevent an arrest or a prosecution, it doesn't matter whether or not there was an outstanding warrant or not. If the defendant knew that there were drugs in another room, it would be a factual determination as to what his intent was. But under similar circumstances, that very well could be obstructing justice as well. Are there any further questions? Thank you. Case number 125117, People of the State of Illinois v. Rasheed Kassler will be taken under advisement as agenda number six. Thank you, counsel, for your arguments today.